GUSTAVE M. LOTH v. ELEANORA FRIEDERICK ET AL.

*Land contract—Equitable mortgage—Release—Merger.*

The execution by the complainant and his wife of a release of the defendants' father from his obligations under a land contract made with complainant, and the leasing of the land to complainant, is held to have operated as a surrender of all of the rights that either had under the contract, and to have merged any verbal arrangement made in connection therewith in the release and lease.

Appeal from Marquette. (Stone, J.) Argued April 12 and 13, 1893. Decided June 1, 1893.

Bill to enjoin the prosecution of summary proceedings to recover the possession of land, and for a conveyance of the land to complainant. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*W. S. Hill,* for complainant, contended:

1. The transaction, at its inception, was a loan by Friederick to Loth, and the conveyance to Friederick was given to secure him, and was a mortgage; citing 3 Pom. Eq. Jur. § 1192; *Richardson v. Barrick,* 16 Iowa, 407; *Holliday v. Arthur,* 25 Id. 19; *Wilson v. Patrick,* 34 Id. 362; *Pritchard v. Elton,* 38 Conn. 434; *McIntier v. Shaw,* 6 Allen, 83; *Moors v. Albro,* 129 Mass. 9; *Campbell v. Dearborn,* 109 Id. 130; *Clark v. Condit,* 18 N. J. Eq. 358; and, in case of doubt, the rule is to hold the transaction a mortgage, instead of a sale; citing *Cornell v. Hall,* 22 Mich. 377; *Stahl v. Dehn,* 72 Id. 645; and deeds intended as mortgages are so treated in equity; citing *Enos v. Sutherland,* 11 Mich. 538; *Hosley v. Holmes,* 27 Id. 426; *Ferris v. Wilcox,* 51 Id. 105; *Jeffery v. Hursh,* 58 Id. 246; *Gamble v. Ross,* 88 Id. 330, 331; *Rogan v. Walker,* 1 Wis. 527; *Budd v. Van Orden,* 33 N. J. Eq. 143.

2. The contract made later was a mere defeasance, and neither created any new right in Loth nor deprived him of his equity of redemption. The surrender of the contract put the parties back upon the rights that existed before its execution, and

released Friederick from some legal obligations and responsibilities beyond those of a mortgagee which the contract had imposed; citing *Villa v. Rodriguez*, 12 Wall. 323; *Russell v. Southard*, 12 How. 139.

*Ball & Hanscom*, for defendants, contended:

1. The deed to Friederick was not, when taken, a mortgage; and as to the evidence necessary to establish such fact, counsel cited *Van Wert v. Chidester*, 31 Mich. 207; *Johnson v. Van Velsor*, 43 Id. 214; *Tilden v. Streeter*, 45 Id. 533; *Etheridge v. Wisner*, 86 Id. 166; *Cadman v. Peter*, 118 U. S. 73.

2. If a deed is not a mortgage when given, it never can become one; citing *Swetland v. Swetland*, 3 Mich. 482; 1 Jones, Mort. § 263; and the giving of the land contract could not change the character of the previous conveyance to Friederick; citing *Hill v. Grant*, 46 N. Y. 496.

3. Whatever rights complainant had he surrendered by his release, and acceptance of a six-year lease of the property.

4. A survivor cannot testify adversely as to private dealings with a deceased person, even in rebuttal of another's testimony as to a conversation between them overheard by the witness; citing *Chadwick v. Chadwick*, 52 Mich. 545.

GRANT, J. The material allegations of the bill filed in this cause are as follows:

In 1882 complainant applied to one Ignatz Friederick for a loan of $1,100 to purchase lot No. 28 in the village of Ishpeming, and for a further loan to assist him in erecting a store building on the lot. Friederick loaned him the $1,100, taking the title in his own name as security. Afterwards Friederick loaned him $1,800 for the erection of the building, and, in addition thereto, complainant used $600 of his own money for the same purpose. Complainant took possession of the property, and, after the erection of the building, moved into it, using the first floor as a store, and the second as his dwelling. February 1, 1883, Friederick and complainant executed the ordinary land contract, by which Friederick agreed to sell to complainant the lot for $2,900, to be paid in six equal annual payments, the first to become due and payable.

February 1, 1884, with interest at 10 per cent. When the first two payments became due, Friederick waived them. September 2, 1885, Friederick asked complainant to surrender the contract, and accept a new one, calling for a monthly, instead of a quarter-yearly, payment of interest. Complainant expressed his reluctance so to change the contract, and thereupon Friederick threatened to forfeit the contract,, and put him and his family into the street, without a home. Fearing that Friederick would carry out his threat, he consented to change the contract, and went with Friederick to the office of A. B. Eldredge, where it was arranged that Friederick should thereafter pay the taxes and insurance, and complainant should pay a fixed sum per month, sufficient to cover the taxes and insurance, and 10 per cent. interest on the $2,900. A release of the old contract was agreed upon, and Mr. Eldredge was at once to prepare the release and the new contract, as agreed upon. Eldredge prepared the release, but, instead of preparing a new contract, prepared a lease for six years at a monthly rental of $30. The release was signed by complainant and his wife, and contained the following language:

"We have released, and by these presents do release, the said Ignatz Friederick from all the conditions and covenants on his part to be performed, contained in a certain land contract bearing date February 1, 1883, * * * it being the intention hereby to cancel and annul the said contract wholly."

The lease was executed at the same time, but it is unnecessary to state its provisions. At the same time complainant executed to Friederick a note for $119.90, which was then due for interest, taxes, and insurance. When the note fell due, complainant resisted payment on the ground that Friederick had not delivered to him a new contract, as agreed upon. Friederick refused then to give a written promise, but made a verbal promise to convey, and acknowl-

edged that he held the title to said premises as security, and promised that complainant might have six years in which to pay the debt, and he thereupon paid said note. Friederick died June 20, 1886. Complainant paid the rent, and, at the expiration of the lease, defendants, who are the heirs at law of Friederick, refused to recognize his rights therein, and commenced proceedings to eject him from the premises. The prayer of the bill is that defendants be decreed to convey to him, upon payment of the said debt, the lot in question.

The answer admits the execution of the deed to Friederick, the contract, the release, and the lease, but denies all the other material allegations in the bill.

The case was heard in open court, and a decree entered, dismissing the bill.

Mr. Friederick paid the entire purchase price for the land in question, after having taken an option for which he paid $50. It is evident that he intended to convey the title to Mr. Loth, with whom he was very friendly. Mr. Loth's testimony as to the arrangement, and as to what was said between him and Friederick, is incompetent, under the statute, because of the death of Mr. Friederick. Aside from this, the evidence is not entirely satisfactory that Mr. Friederick loaned the money, and took the title as security. It is unnecessary, however, to determine this question, because the arrangement, whatever it was, became merged in the release and lease of September 1, 1885. Stronger language than that of the release could not well be used to indicate the intention of the parties to surrender all the rights that either had under the land contract, and any verbal arrangement made in connection therewith. Complainant was at that time behind in the payment of both principal and interest to an amount exceeding $1,000. According to his own testimony he had expended upon the property but $450. He introduced a bill of items for

this, made up entirely from memory, and without a single date to show when they were furnished, or when the work he charged for was done. The proofs fail to sustain the allegation in his bill that he was induced by fraud or duress to sign the release and lease, or that there was any agreement at that time to give him a written contract for a deed from Friederick for $2,900. The note was given by him to Friederick in settlement of past-due interest, taxes, and insurance.

Mr. Eldredge, the attorney who drew the papers, was present at their execution, and took the acknowledgment of both complainant and his wife. The negotiations were entirely friendly. Mr. Eldredge explained to complainant the effect of the papers. Mr. Friederick said to complainant that he did not believe he would be able to carry out his contract, and proposed that he would give him a lease for six years if he would surrender it. After considerable talk this was agreed to, and Mr. Eldredge went to his office and drew the papers. He explained to both complainant and his wife that they would have no legal right in the premises after the papers were executed. Mr. Friederick then promised complainant, verbally, that if he would pay the $2,900 within the time provided by the contract of sale he would convey the land to him. But it was expressly understood and explained that there was no legal obligation to do so, and that he must depend entirely upon Mr. Friederick's word of honor. The contract at that time had about four years to run. Complainant made no offer of payment, either to Mr. Friederick, in his life-time, or to his heirs, at the expiration of the four years.

Mr. H. O. Young, who was the attorney for complainant in the suit brought upon the note, and who is a witness for complainant in this suit, testified that complainant then claimed that Mr. Friederick was to have incorporated in the lease an agreement giving him a certain

length of time to redeem the property. Mr. Friederick denied this:

"He said he wanted to make an end of the other contract. He said that is what he made the change for,—to get an end of the contract. Loth was behind in making his payments, and he wanted to end it, and still kept saying: 'If you want it now, you can have it at that price.' * * * I know I didn't tell complainant that any promise that Friederick had made verbally—a promise to give a contract—was good, and I am very certain that Friederick never made any at that time, but kept refusing to."

This note was due in 60 days, and was paid November 27, 1885. Complainant, upon the advice of his attorney, then paid the note. He then knew that the verbal promise was void, and could not be enforced. If, by mistake or fraud, the agreement to convey was omitted from the lease, complainant should promptly have taken steps either to reform the lease, or to surrender it, and rely upon the original contract. But, as already stated, there was no agreement to insert it in the lease.

The decree is affirmed, with costs.

The other Justices concurred.